CaRüthees, <J.,
delivered the opinion of the court.
This bill was filed by the children and widow of Lit-tleberry Bostick, claiming the remainder in a tract of *536 land under tlie will of 'William Bostick, the father of said Littleberry, against the defendant Winton, who claims by purchase and regular deraignment of title, as he insists, under the will.
The facts as they appear in the record are these: William Bostick made his will and died in 1835. In the third clause he devises to his son Littleberry, a tract of land on which the latter then resided, of three hundred acres, in Eranklin county, during his life, or so long as he continued to live upon it; “at his death or removal, the same to go to his children or their representatives in fee.” He then gives him a limited power of disposition in these words: “But I give to my son, Littleberry, at any time before his death or removal, by deed or will, the power to dispose of said land to one or more of his children, so as to vest the entire estate in such child or children, if he should think proper to do so.” In the 7th clause he gives to the wife of said Littleberry, if she should outlive her husband, fifty acres of said tract of land, including the mansion house, with timber to support the same during her lifetime or widowhood. In the 14th clause he provides that if the parent should fail to exercise the power of disposition to one or more of the children, then they all shall take equally at the termination of the particular estate.
In 1841, Littleberry Bostick, in the exercise of the power given him in the will of his father, made a deed in fee for the tract of land to his son, John G-. Bostick. At this time Littleberry was under a prosecution for the murder of Lefever, and anxious to procure bail for his appearance. He offered his said son, John G-., who, being then insolvent, would not be taken by the court. *537 Whereupon, the land was conveyed to him under advice of counsel, and he was then received as hail. lie also became security of his father for his lawyers’ fees, amounting to $1,000. In June, 1842, Ready and Sneed recovered judgment on their fee note, and levied upon the said land as the property of John G. and Littleberry Bostick, and became the purchasers at the amount of their debt, including interest and cost, $574.12. II. L. Turney had taken a mortgage on the same land to secure his fee note for $500 against the said Littleberry and John G.
On the 27th of January, 1845, Mr. Turney redeemed the land of Ready and Sneed, and received a deed. John G.^ soon after the deed to him, removed to Georgia, never having taken possession of the land, but the wife and other children of said Littleberry remained upon it, as before, until his time of confinement in the penitentiary expired, and he returned, when he sold the land to defendant, Winton, for $2,000. About $1,200 of this was necessary to pay off the incumbrances in favor of Mr. Turney. The balance was paid to Littleberry, or those to whom he assigned the notes. John G. came up from Georgia and made the deed to Winton, and Mr. Turney also executed a quit claim deed.
■It is jDroved by John G. that he told Winton he had no title, and explained fully to him the whole affair. The proof also shows that the land was worth at the time from three to four thousand dollars. He also proves that he was to convey the land back to his father after the prosecution was ended, and that he got no part of the consideration for which it was sold to Winton. The proof is clear that Winton knew all about the state *538 of the title, and the cause of the deed to John &., as well as the rights of complainants.
The said Littleberry died- in 1848, leaving the complainant Sophia, his widow, and the other complainants, together with defendant, John GL, liis only children.
It will be seen from this statement of facts, that the main question which alises is, whether the conveyance to John G. was a valid exercise of the power conferred upon Littleberry by the will of "William Bostick. And we consider it very clear that it was not. Littleberry Bostick took only a life estate in the land, coupled with a power of appointment to any ’one or more of his children, subject to the special devise of fifty acres to his wife, Sophia, if she should outlive him. The remainder was vested in all his children, and could only be defeated by the Iona fide exercise of the power of appointment. 4 Kent, 201, 202, and Reame on Rem., 277. 16 Virg., 491.
In this case the remainder vested in such children as Littleberry had at the death of the testator; and on the birth of other children, the estate opens and they are let in and become invested of equal proportions of the-property. 4 Kent., 205. The vested remainder in the children first becoming capable, is only disturbed by after born children in quantity so as to let in the latter for equal shares. II. So, by the terms of this will, an estate is given to Littleberry subject only to his continuance upon the land, and at his removal from it, or death, the remainder which was vested is to take effect, provided he has not legally exercised the power of appointment. Upon this contingency alone the remainder depended; and if it did not happen, the *539 complainants, whether bom before or after the death of the testator, are unquestionable owners of the estate. Haywood's heirs vs. Moore, 2 Humph., 584-588. Fearne, 228-9.
Then was this power so exercised as to pass the estate to John G-., and defeat the contingent remainder to the complainants? The question is answered in Story’s Eq., § 255: “ A person having a power of appointment for the benefit of others, shall not by any contrivance use it for his own benefit. Thus if a parent has power to appoint to such of his children as he may choose, he shall not, by exercising it in favor of a child in consumption, gain the benefit' of it himself, or by a secret agreement with the child in whose favor he makes it, derive a beneficial interest from the execution of it.”
This position is well sustained by the cases referred to by the commentator, and we regard it as unquestionable law. In the case before us, the power was avowedly exercised in favor of John G-. for the benefit of Littleberry, and was to enable him, by becoming the owner of the land, to become security or bail, and for fees. It was then a fraud upon the power, and cannot be maintained. It did not therefore disturb, or in the least affect the rights of complainants which depended upon the contingency of a valid and "bona fide exercise of the power.
But secondly, it is insisted that the defendant is an innocent purchaser, without notice. ¥e think that question does,-not arise in this case, because the proof shows clearly that Winton, at and before his purchase, had full notice or knowledge of all the circumstances attending *540 the conveyance to John G. and tho continued claim of complainants. Mr. Turney proves that at the time the deeds were executed to Winton, that the Bosticks agreed to get complainants to convey their interest to him. There can be no doubt of the fact that he purchased with full knowledge of the claim of complainants, and of the reasons and object of the conveyance to John G. But as he was getting the land at little-more than half its value, he resolved to risk it, and must take the consequences. It is then entirely unnecessary to examine the other grounds presented in the argument for and against the right of an. innocent purchaser to plant himself on that defense, and defeat the opposing title. We leave these questions to be settled when they necessarily come up.
Tho third ground assumed is, that the defendant stands in the shoes of Ready and Sneed, who were judgment creditors, and as such not bound to notice the title of complainants, and must prevail over it. The judgment creditors of Littleberry and John G. Bos-tick only purchased such title as they had, at the time of sale, and that passed to Mr. Turney at the redemption from them.
The defendant then, by his purchase and deeds from Bostick and Turney, only became invested with such title as they had. And this title as against complainants, must still depend upon the validity of the conveyance to John G. The title of complainants is derived from the will of William Bostick, and is a good and perfect legal title, which could only have been defeated in the single mode prescribed in said will; and this we have seen has not been done, as the *541 fraud and bad faith in which the power was exercised renders it null and void, and leaves the rights of these remainder-men in the same condition precisely as if it had not been attempted. It is true that a creditor, or one purchasing at a creditor’s execution sale, is not affected by notice of adverse titles which are imperfect for want of registration, &c., but still they must look to, and stand upon the title which they purchase in a contest with those .who rely upon a good and perfect legal title. Caveat emptor is the undoubted rule in such cases. 2 Yerg., 394. 8 Yerg. 46, 58-9.
The defendant here has all the rights of John G. Bostick, Ready and Sneed, and Turney, but no more. The complainants have a clear legal title under the will, the valid exercise of the power out of the way; and this must prevail against a naked legal title derived under the sheriff’s sale.
The unreported case of Edmiston & McEwen vs. Robertson et als., decided at last Term, to which we are referred, rested upon a different principle entirely. In that case, the complainants endeavored to set up a parol defeasance upon an absolute deed, converting it into a mortgage, against those who claimed as purchasers at execution' sale of the same land as the property of the vendee.
That case was decided upon the ground that an equitable title resting in' parol, could not prevail over a purchaser of the legal title, fair upon its face, and duly registered under a judgment and execution against the legal owner. And further, that a knowledge by such a person of the outstanding equity, would not affect him any more than ~ notice of an outstanding *542 unregistered deed. It would of course be different in cases of purchasers at private sale with notice. This was the point decided in that case. It has no analogy to this. There the person who had made a clear and unconditional conveyance of the land, which had passed into the hands of others^ attempted to disturb them by the assertion of some reserved equity to be established by parol and change the character and effect of his own deed. Here the title obtained' by the defendant, and those under whom he claims, originated in acts with which the complainants had no connection or concurrence. They come forward with a title originating in a different source, and independent in its character. There is no principle which can repel them, and they must prevail.
We have not thought it necessary to notice several other points presented which would be equally fatal to the success of defendant.
There is no error in the decree of the chancellor, and it’ will be affirmed.